IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CRISTINA PEREZ, | § | |
|         Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | C.A. NO. C-06-174 |
| JO ANNE B. BARNHART, | § | |
| Commissioner of the Social Security | § | |
| Administration, | § | |
|         Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, Cristina Perez, brought this action seeking review of the Commissioner's final decision that she is not entitled to receive disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. (D.E. 1). She moves the Court to reverse the Commissioner's decision, and award benefits, or alternatively, that the case be remanded for further proceedings. (D.E. 1, at 2). She filed a motion for summary judgment on October 13, 2006. (D.E. 18). Defendant filed a response to plaintiff's motion for summary judgment, in which, she also moves for summary judgment. (D.E. 19).

For the reasons stated herein, it is respectfully recommended that plaintiff's motion for summary judgment be granted, (D.E. 18), and that the case be remanded to the Commissioner to hold a new administrative hearing. It is further respectfully recommended that defendant's motion be denied. (D.E.1 9).

# I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).

# II.  BACKGROUND

Plaintiff was born on August 28, 1960, and was forty-four years old at the time of the most recent hearing.  Tr. 75, 404.  She received a G.E.D., and reports that she is able to read, write, and do basic arithmetic.  Tr. 404.  In the last fifteen years, she has worked as a cook's helper, a cook, a machine operator, and a nurse's aide.  Tr. 405-07.  She quit working because her physical ailments cause "constant pain," and she reports that medications do not relieve the pain.  Tr. 408-09.  Additionally, she indicates that she has pain from the bottom of her foot to her hip on her right side.  Tr. 408.  Her arthritis causes her fingers to "tighten up" to the point that she has to "physically unbend them."  Tr. 411.  In addition, she has poor vision, and her hepatitis causes pain.  Tr. 417.  She contracted hepatitis, which caused cirrhosis, from a former boyfriend.  Tr. 413.

## A.    Procedural History.

At the administrative level, a hearing was held on August 25, 2005.  Tr. 403. The Administrative Law Judge ("ALJ") issued a written decision on September 20, 2005, denying plaintiff's request for DIB.  Tr. 16-25.  The ALJ found that plaintiff was not disabled and could perform work that exists in large numbers in the

national economy.  Tr. 24.  She appealed the ALJ's decision to the Appeals Council, which denied her appeal on February 24, 2006.  Tr. 5-8.  Following the denial of plaintiff's appeal by the Appeals Council, plaintiff timely filed this action on April 18, 2006.  (D.E. 1).

**B.    Plaintiff's Impairments**.

Plaintiff claims that she cannot work because she suffers from diabetes mellitus, hepatitis C, cirrhosis of the liver, pain, and depression.  Tr. 16-17, 71-74, 92, 381-83, 407.  In September 2002, Dr. James Geddes noted that plaintiff was diabetic, but receiving no treatment.  Tr. 140.  She complained of leg pain, and he also noted "probable diabetic neuropathy."[1]  Tr. 139-40.  He prescribed Neurontin.[2] Tr. 139.

In October 2002, Dr. O.J. Rodriguez saw plaintiff twice because she was complaining of leg pain.  Tr. 202.  He gave her an injection and prescribed Vioxx. Id.  He saw her for a follow up visit in December, at which she indicated that she was feeling better.  Tr. 199.  In January 2003, while plaintiff was still under the care of Dr. Rodriguez, she underwent a mammography to investigate a suspicious abnormality.  Tr. 183-84, 194-95.

---

[1] The most common kind of diabetic neuropathy "is a chronic symmetrical sensory polyneuropathy affecting first the nerves of the lower limbs and often affecting autonomic nerves."  Dorland's Illustrated Medical Dictionary 1212 (29th ed. 2000) [hereinafter Dorland's].

[2] Neurontin is the trademark name "for a preparation of gabapentin."  Dorland's, supra n.1, at 1212.  Gabapentin is defined as a substance "used as adjunctive therapy in the treatment of partial seizures."  Id. at 721.

In April 2003, plaintiff began seeing Dr. Robert R. Murphy.  Tr. 153.  She still complained of pain in her legs, and he found that she also suffered from splenomegaly.[3]  Tr. 166, 228.  She received a "diabetic management plan."  Tr. 153. In May 2003, she returned to Dr. Murphy, still complaining of pain in her lower extremities.  Tr. 165.  He referred her to Dr. Frank Bonikowski for a neurological consultation.  Id.  Around the same time, Dr. Murphy referred her to be admitted as an inpatient for uncontrolled diabetes mellitus.  Tr. 168.

In May 2003, Dr. Bonikowski advised her "that the most likely explanation for her problem is a diabetic peripheral neuropathy."  Tr. 213.  He told her that she could increase the amount of Neurontin "as tolerated."  Id.  He also prescribed Ultracet,[4] Ultram, and Abilify.[5]  Tr. 214.  Later that same month, she visited Dr. Yvonne Manolo for a consultation regarding thrombocytopenia[6] and splenomegaly. Tr. 188-90.  Dr. Manolo diagnosed her as presenting with "thrombocytopenia, elevated LFTs [liver function tests] and borderline splenomegaly ... most consistent

---

[3] Splenomegaly is "enlargement of the spleen."  Dorland's, supra n.1, at 1682.

[4] Ultracet tablets are a combination of two analgesics, tramadol hydrochloride and acetaminophen.  Physician's Desk Reference 2462 (60th ed. 2006) [hereinafter PDR].  Tramadol hydrochloride is "an opioid analgesic used for the treatment of moderate to moderately severe pain."  Dorland's, supra n.1, at 1862.  Acetaminophen "a nonprescription drug having analgesic and antipyretic effects similar to aspirin but only weak anti-inflammatory effects."  Id. at 12.

[5] Abilify is the trademark name for aripiprazole and is a psychotropic drug.  PDR, supra n.4, at 916.

[6] Thrombocytopenia is a "decrease in the number of platelets."  Dorland's, supra n.1, at 1836.

4

with a chronic liver disease complicated with hypersplenism and subsequently causing cytopenias." Tr. 189. Dr. Manolo reported this information back to Dr. Murphy. Tr. 190.

On May 13, 2003, Dr. Murphy ordered that plaintiff undergo a magnetic resonance imaging ("MRI") of the lumbar spine. Tr. 191. It was found that she suffered from "[m]ild degenerative disc disease at the L3-4 and L4-5 levels without evidence of disc herniation or compromise of the exiting nerve roots." Id.

In June 2003, plaintiff returned to Dr. Murphy for a check up. Tr. 162. He appears to have noted at that time that her diabetes was still uncontrolled. Id. She visited Dr. Manolo twice in June 2003. Tr. 185-87, 271-74. On June 13, 2003, Dr. Manolo stated that "[t]his patient probably has chronic liver problems causing elevated LFTs, splenomegaly, and thrombocytopenia[, which] can cause hypersplenism." Tr. 186. She ordered that plaintiff undergo a hepatitis profile, CT scan of the abdomen, and direct Coomb's test. Id. On June 30, 2003, following these tests, she assessed plaintiff as having hepatitis C, mild splenomegaly, and mild thrombocytopenia. Tr. 271. She recommended that plaintiff be monitored closely for hepatocellular carcinoma,[7] and also recommended a biopsy of plaintiff's lymph node in the left cervical region. Id.

Plaintiff received ongoing treatment from Dr. Murphy in July 2003. Tr. 161.

---

[7] Hepatocellular carcinoma refers to a malignant growth of the liver cells. Dorland's, supra n.1, at 284-85.

She also underwent a CT scan for a purported mass in her neck.  Tr. 227.  In August 2003, she again visited Dr. Murphy.  Tr. 160.  She continued to report pain and a burning sensation in her legs.  Id.  He also explained to her that the Abilify would only work over time.  Id.  However, when he saw her again a week later, she had stopped taking the Abilify.  Tr. 159.  She was also bitten by a brown recluse spider in August 2003.  Tr. 158-59, 269.

In September 2003, plaintiff saw Dr. Murphy once, and he noted that she was "doing well."  Tr. 158.  In October 2003, she reported that she had been suffering sharp chest pains and that her "face felt numb" one time.  Tr. 157.  She underwent a series of tests.  Tr. 171-72, 196-97, 275, 306-07, 320, 324.  He also referred her to Dr. Amaro for a consultation regarding cirrhosis of the liver.  Tr. 315.  In November 2003, Dr. Murphy prescribed Levaquin[8] for what appears from the records to be a bladder or urinary tract infection.  Tr. 156, 170, 303.

In December 2003, plaintiff visited Dr. Murphy twice, and he adjusted her diabetes treatment plan because her symptoms appeared to have increased.  Tr. 154-55.  In a "Diabetes Mellitus Residual Functional Capacity Questionnaire," he noted that her symptoms included fatigue, general malaise, extremity pain and numbness, difficulty walking, muscle weakness, diarrhea, frequency of urination, hot flashes, excessive thirst, vascular disease/leg cramping, dizziness/loss of balance, and

---

[8] Levaquin is the trademark name "for a preparation of levofloxacin."  Dorland's, supra n.1, at 987.  Levofloxacin is defined as "a broad-spectrum quinolone antibacterial agent."  Id.

6

hyper/hypoglycemic attacks.  Tr. 217.  He also expressed that she would need frequent breaks, would have a "marked limitation" in dealing with work stress, and that her problems would frequently interfere with attention and concentration.  Id.

In January 2004, plaintiff visited Dr. Murphy because she was feeling dizzy. Tr. 148.  In February 2004, she visited the Christus Spohn Hospital Kleberg emergency room because of abdominal pain.  Tr. 261, 265.  Upon admission, she was diagnosed with a urinary tract infection and uncontrolled Type II diabetes mellitus.  Tr. 259.  On discharge, she was diagnosed with "pyelonephritis uncontrolled due to Escherichia coli" and diabetes mellitus.  Id.

On April 13, 2004, Dr. Murphy again adjusted plaintiff's insulin to better control her diabetes.  Tr. 255.  On April 26, 2004, he recorded an improvement in the control of her diabetes.  Tr. 254.  In May 2004, she was screened for kidney stones.  Tr. 253, 284-85.  That same month, she had high glucose levels and it was noted that her diabetes mellitus was not well controlled.  Tr. 299.

Plaintiff visited Dr. Walter Gallo at Calallen Orthopaedics on June 9, 2004. Tr. 257-58.  He found severe arthritis in her left thumb, which restricted the range of motion of her left thumb.  Id.  He recommended a brace.  Id.  In July 2004, Dr. Murphy noted that she suffered from gastrointestinal bleeding and arthritis.  Tr. 252.  On July 14, 2004, a barium enema air contrast was performed, and she had no colonic obstruction.  Tr. 281-82.  On July 20, 2004, she underwent an examination

7

for gastroesophageal disease, gastrointestinal bleeding, and abdominal pain.  Tr.
279-82.  It was noted that she had a "negative upper GI series," but that additional
evaluation of the colon might be helpful.  Id.

In December 2004, Dr. Michael Nisbet evaluated plaintiff for diabetic
retinopathy.[9]  Tr. 379.  He recommended focal laser photocoagulation to both eyes.
Id.  Records indicate that she received photocoagulation, and also new glasses, by
February 2005.  Tr. 380.  She continued to see Dr. Murphy through the end of 2004,
and records indicate that he was her primary physician in 2005 as well.  Tr. 352.

Dr. Stephen Schneberger diagnosed plaintiff as having pelvic adhesive
disease, cervical stenosis, thrombocytopenia, Hepatitis C with cirrhosis, diabetes,
and hypothyroidism, as well as possible endometriosis, in April 2005.  Tr. 336, 340.
By April 2005, she had also been diagnosed with moderate right carpal tunnel
syndrome.  Tr. 372.  In July 2005, she underwent a procedure to correct cervical
stenosis and menorrhagia.  Tr. 333.

## III.  LEGAL STANDARDS

**A.     Social Security Act Disability Benefits Requirements.**

The Social Security Act establishes that every individual who is insured for
DIB, has not attained the set retirement age, has filed an application for disability
benefits, and is under a disability is entitled to receive disability benefits.  42 U.S.C.

---

[9] Diabetic retinopathy refers to an inflammation of the retina associated with diabetes
mellitus.  Dorland's, supra n.1, at 1566-67.

§ 423(a)(1).  Disability is defined as an "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## B.  Social Security Administration Regulations And Rulings.

The Social Security Administration uses a five-step sequential process to determine if an individual suffers from a disability.  20 C.F.R. § 404.1520.  A disability finding at any point in the five-step process is conclusive and ends the analysis.  Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990) (citation omitted).  A claimant bears the burden of proof on the first four steps with the burden shifting

to the Commissioner at the fifth step.  Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam).  A claimant must prove that: (1) she is not presently engaged in substantial gainful activity; (2) she suffers from an impairment or impairments that are severe; and (3) the impairment meets or equals an impairment listed in the appendix to the regulations; or (4) due to claimant's RFC, the impairment prevents the claimant from doing past relevant work.  20 C.F.R. § 404.1520(a)(4); see also Bowling, 36 F.3d at 435; Villa, 895 F.2d at 1022.

The Fifth Circuit has held that "[t]he first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities."  Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000).  The Commissioner may find a claimant's impairment fails to meet the significant limitation requirement, "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  Id. at 391 (citing Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985)).

Step three requires a claimant to prove that her impairment meets one or more of the impairments listed in the regulations.  See 20 C.F.R. § 404, Subpt. P, App. 1.  The list includes both physical and mental impairments.  The criteria for

mental impairments take into account whether there is marked interference with activities of daily living, social functioning, concentration, persistence, or pace, and whether the claimant has suffered repeated episodes of decompensation.  20 C.F.R. § 404, Subpt. P, App. 1, Part A § 12.00(A).  The regulation defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  Id. Part A § 12.00(C)(4).  The claimant must present evidence that the impairment is a long-term problem rather than a temporary set-back, but "does not have to show a 12 month period of impairment unmarred by any symptom-free interval."  Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986) (citation omitted).

Under the fourth step, a claimant who is unable to show that her impairment meets one of the listed impairments must show that she is unable to perform her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The claimant's residual functional capacity ("RFC") is taken into consideration to determine whether claimant's impairments may cause physical and mental limitations that affect the ability to work.  20 C.F.R. § 404.1545.  The RFC is the most a claimant can do despite any limitations caused by an impairment.  Id.  All relevant evidence in the record, including medical and non-medical evidence, is taken into consideration by

the Commissioner when making a determination of a claimant's RFC.  Id.

The Commissioner must consider all of plaintiff's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and non-medical evidence in the record.  S.S.R. 96-7p, 1996 WL 374186.  "[T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Id. at *2. When a claimant's statements concerning symptoms and their associated limitations "are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  Id.

In cases where "additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual statements."  Id. at *3.  The adjudicator must also address the degree of impairment caused by the combination of a claimant's physical and mental impairments.  Strickland v. Harris, 615 F.2d 1103, 1110 (5th Cir. 1980) (citing Dodsworth v. Celebrezze, 349 F.2d 312 (5th Cir. 1965)). Because an individual's "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the regulations set out factors

12

that must be taken into consideration by the adjudicator concerning a claimant's symptoms, in addition to objective medical evidence.  20 C.F.R. § 404.1529(c)(3). Among the factors considered are the following: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medication taken for other symptoms; (5) treatment, other than medication, received for relief; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. Id.

The adjudicator's discussion of a claimant's RFC must thoroughly discuss and analyze the objective medical and other evidence in relation to the symptoms. S.S.R. 96-8p, 1996 WL 374184, at *7.  This discussion must include a resolution of any inconsistencies in the record, address a logical explanation of effects of the alleged symptoms on the individual's ability to work, contain a determination of why symptom-related functional limitations can or cannot be reasonably accepted as consistent with medical or non-medical evidence, and address any medical opinions contained in the record.  Id.

If the claimant is able to meet her burden under the first four elements, the burden shifts to the Commissioner.  The fifth step requires the Commissioner to determine, based on the claimant's RFC, age, education, and work experience, if the

claimant can make an adjustment to other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The Commissioner will find that the claimant is disabled if the claimant cannot make an adjustment to other work.  Id.

**C.      Judicial Review.**

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) (citations omitted).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Carey, 230 F.3d at 135.  The Fifth Circuit has described this burden as more than a scintilla, but lower than a preponderance.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).  A finding of "'no substantial evidence'" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam) (citation omitted).

If the Commissioner's findings are supported by substantial evidence, the Court must defer to the Commissioner and affirm the findings.  See Masterson v.

Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).  In applying the substantial evidence

standard, the Court scrutinizes the record to determine whether such evidence is

present.  The Court, however, does not re-weigh the evidence, try the issues de

novo, or substitute its judgment for that of the Commissioner.  Id.; Greenspan v.

Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).  Factual conflicts that

exist in the record are for the Commissioner, and not the Court, to resolve.

Masterson, 309 F.3d at 272.  It is incumbent upon the Court to look at the evidence

as a whole and take into account the following factors: (1) objective medical

evidence or clinical findings; (2) diagnosis of examining physicians; (3) subjective

evidence of pain and disability as testified to by the claimant and others who have

observed her; and (4) the claimant's age, education and work history.  Wren v.

Sullivan, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam) (citation omitted).

## IV. DISCUSSION

The ALJ found that plaintiff is not disabled within the meaning of the Social

Security Act and that she had not engaged in substantial gainful activity since the

alleged onset of her disability.  Tr. 17.  He further found that she is disabled due to

diabetes, hepatitis, cirrhosis, and pain, but that although severe, the impairments did

not meet or medically equal one of the regulation's listed impairments.  Tr. 21, 23-

24.  He determined that she is unable to perform any of her past relevant work.  Tr.

24.  He also determined that she has a "light" residual functional capacity.  Id.

Based on the testimony of a vocational expert, he found that even though plaintiff cannot perform a full range of light work, she could still perform a "significant range" of light work.  Id.  He found that she could work as a housekeeper, amusement/recreation worker, or identification verification clerk.  Id.  Accordingly, he found that she was not disabled.  Id.

Plaintiff objects to the ALJ's findings and argues that his decision is not supported by substantial evidence because he failed to analyze Dr. Murphy's opinion.  (D.E. 18, at 1).  Specifically, she asserts that "[t]he ALJ committed reversible error by failing to accord the treating physician's opinion considerable weight, or, in the alternative, to demonstrate good cause for disregarding Dr. Murphy's opinion."  Id. at 14.  She highlights the ALJ's reliance on the medical expert's opinion, rather than Dr. Murphy's, despite there being an abundance of medical documentation to support Dr. Murphy's opinion regarding her residual functional capacity.  Id. at 12-14.

Social Security regulations require the Commissioner to consider the combined effect of a claimant's multiple impairments in making its determination of whether the impairments are medically severe.  20 C.F.R. § 404.1523; Loza, 219 F.3d at 393.  The regulations further require that where the symptoms alleged include pain, the conclusion on RFC must thoroughly discuss and analyze the objective medical and other evidence in relation to the symptoms.  See 20 C.F.R.

16

§ 404.1529(c)(3); see also S.S.R. 96-8p, 1996 WL 374184, at *7.  In his opinion,

the ALJ stated that plaintiff's RFC enables her to perform "a significant range of

light work."  Tr. 24.  Though he noted that her ailments are severe, he did not

accord Dr. Murphy's opinion as credible, or the plaintiff's subjective complaints of

pain as credible, and did not address the combined impact her symptoms would

have on her ability to complete tasks.

This Court has a limited function in reviewing the decision regarding

disability benefits.  However, "this Court is not a rubber stamp for the Secretary's

decision and is not simply reviewing the record to find evidence to support the

ALJ's decision."  Alejandro v. Barnhart, 291 F. Supp.2d 497, 500 (S.D. Tex. 2003)

(citing Cook v. Heckler, 750 F.2d 391, 393 (5th Cir. 1985); Singletary, 798 F.2d at

823).  "Unlike the area of substantial evidence, the ALJ's legal determinations are

not afforded the same deference."  Id.

The ALJ is entitled to determine the credibility of medical experts and weigh

their opinions accordingly.  Greenspan, 38 F.3d at 237.  However, Social Security

regulations require that the ALJ show good cause for rejecting a medical opinion.

20 C.F.R. § 404.1527(d); Loza, 219 F.3d at 395.  Indeed, the Fifth Circuit has

established that an ALJ's failure to afford treating physicians' opinions great weight

is reversible error.  Loza, 219 F.3d at 395.  An ALJ may not arbitrarily ignore

uncontroverted medical evidence.  Goodley v. Harris, 608 F.2d 234, 236-37 (5th

17

Cir. 1979) (citing Mims v. Califano, 581 F.2d 1211 (5th Cir. 1978)).

In Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit held "that, absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Id. at 453 (emphasis in original).  The criteria set forth by Social Security regulations include whether a treating physician's opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques ... not inconsistent with ... other substantial evidence," and also the length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention.  20 C.F.R. § 404.1527(d)(2)-(6).  In Newton, the Fifth Circuit also determined that if the "records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician."  Newton, 209 F.3d at 453 (citing 20 C.F.R. § 404.1512(e)) (emphasis added).  Even when a physician's opinion does not meet the test for controlling weight, it is still entitled to deference, and in many

cases, should still be accorded the greatest weight.  Id. at 456; see also Loza, 219

F.3d at 395 ("The ALJ is not at liberty to make a medical judgment regarding the

ability or disability of a claimant to engage in gainful activity, where such inference

is not warranted by clinical findings.  Consequently, the ALJ and the Commissioner

committed reversible error by failing to accord 'great weight' to the medical reports

of the treating physicians.").

 At plaintiff's hearing before the ALJ, Dr. Alice Cox testified as a medical

expert.  Tr. 16.  She had not treated plaintiff, but instead, reviewed her medical

records prior to the hearing, and based her testimony solely on this review.  Tr. 416-

26.  In his decision, the ALJ adopted Dr. Cox's testimony and disregarded Dr.

Murphy's opinion:

> Dr. Cox testified she does not agree with the residual
> functional capacity of the claimant's treating family
> doctor, Dr. Murphy (Ex. 86-77) because the limitations set
> by him are extreme, contradictory and not consistent with
> medical findings to support his residual functional
> capacity.  Dr. Cox testified that the claimant's eyesight is
> still good but there are some early signs on [sic] diabetic
> retinopathy.  (Ex. R124).  In summarizing the medical
> evidence, Dr. Cox testified the claimant does not have a
> level of severity, singularly or in combination, to either
> meet or equal any of the listings.  The Administrative Law
> Judge finds the testimony of the medical expert credible....
> The Administrative Law Judge recognizes the extreme
> limitations set by treating physician, Dr. Murphy,
> however it appears the doctor has apparently relied quite
> heavily on the subjective reports of symptoms and

> limitations, provided by the claimant, and seems to
> uncritically accept as true most, if not all, of what the
> claimant reports.... [T]he Administrative Law Judge finds
> this is a mere declaration of incapacity.

Tr. 19.  Dr. Murphy was plaintiff's primary physician for a span of two years

leading up to the ALJ's decision.  Tr. 153, 352.  During that time, he often referred

her to specialists for further diagnoses and treatments.  Tr. 165, 189, 191, 213, 257,

315, 336, 372, 379.  He also constantly revised her diabetes treatment plan, often

noting that her diabetes was not controlled.  Tr. 148, 154-55, 299.  Other physicians

also treated her for problems related to her diabetes, cirrhosis, and other health

concerns.  Tr. 213, 336, 372.

        The Fifth Circuit requires that the ALJ carefully examine the treating

physician's opinion in light of all of the evidence in the record and the factors set

forth in Social Security regulations, and that he provide a detailed analysis when

rejecting a treating physician's opinion.  Newton, 209 F.3d at 453.  The ALJ did not

provide a detailed analysis of his rejection of Dr. Murphy's opinion, or reasons for

why he did not find the objective medical evidence persuasive.  His acceptance of

the medical expert's testimony, without seeking further clarification from either

plaintiff's treating physician regarding his opinion, and without seeking information

from any other physician who had actually treated her, does not amount to the

"great weight" an ALJ is supposed to give to a treating physician's opinion.  See

<u>Loza</u>, 219 F.3d at 396; <u>Newton</u>, 209 F.3d at 456.  In addition, the ALJ failed to request or consider information from any other physician who had personally examined or treated plaintiff, as required by the Fifth Circuit.  <u>See</u>  <u>Newton</u>, 209 F.3d at 453.

Therefore, it is respectfully recommended that the Court find that the ALJ's determination of plaintiff's RFC is not supported by substantial evidence in the record because the ALJ did not properly apply the applicable legal standards in reviewing the opinions of Dr. Murphy.

## V.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that plaintiff's motion for summary judgment be granted, and that the case be remanded to the Social Security Administration for a new administrative hearing.  It is further respectfully recommended that defendant's motion for summary judgment be denied.

Respectfully submitted this 17th day of November 2006.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure; 28 U.S.C. § 636(b)(1)(C); and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).